**In re CORPORACION DE SERVICIOS MEDICO–HOSPITALARIOS DE FAJARDO, INC., Debtor.**

**Bankruptcy No. 85–00553.**

United States Bankruptcy Court, D. Puerto Rico.

June 1, 1993.

See also 149 B.R. 746.

Richard A. Lee, San Juan, PR, for Trustee.

## ORDER GRANTING REQUEST FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge (Sitting by Designation).

Before the Court is the Motion of Richard Lee, Esq., attorney for the Chapter 7 Trustee, Requesting Findings of Fact and Conclusions of Law with respect to our March 15, 1993 Order awarding attorney's fees in the amount of $61,754, rather than the $65,754 applied for Mr. Lee's motion is GRANTED, and we provide the following as background, together with the requested findings of fact and conclusions of law.

1. The Applicant has previously been awarded $54,260 as counsel to the Creditors' Committee, while this case was in Chapter 11;

2. Thereafter, as attorney for the Chapter 7 Trustee, the Applicant has been compensated for fees and expenses as follows:

(1) $27,174 for the period January 30 through May 31, 1991;

(2) $23,327 for the period June 1 through September 30, 1991;

(3) $42,301 for the period October 1, 1991 through March 31, 1992;

(4) $65,770 for the period April 1, 1992 through July 31, 1992;

(5) Reimbursement of $2,345 in travel expenses awarded on February 27, 1992;

(6) $66,884 for the period August 1, 1992 through November 30, 1992.

The total compensation received by Mr. Lee for services as counsel to the Chapter 7 Trustee is $227,802, and when added to allowances as counsel to the Creditors' Committee, he has been paid $282,062 to date. The total professional fees and expenses awarded in this case to all professionals so far amount to $973,544.

■ Before addressing the items in Mr. Lee's fifth application which caused us to reduce his request by $4,000, we note that the instant motion contains erroneous and misleading averments, in what we see as an attempt to elude this Court's obligation to independently review *all* professional fee applications. Specifically, we refer to Movant's paragraphs 2 and 3 which state that:

2. Upon the Court's order, notice of the Application was given on January 8, 1993 to all creditors and other parties in interest indicating that unless an objection or request for hearing in respect to the Application was filed within 20 days of the date of the notice, the Court may approve the application and authorize payment without further notice or hearing.

3. Notwithstanding the foregoing and the fact that no objections were filed, the matter was set for hearing on March 8, 1993. No objections were advanced at the hearing and the Court took the matter under advisement.

At no time did this Court enter an order advising the Applicant that in the absence of objection his application would be approved, without hearing, in the amount requested. This Court does not follow such a procedure, because, "[e]ven without regard to objections by other parties in interest, the court has an independent judicial responsibility to evaluate professionals' fees." *In re Bank of New England Corp.,* 134 B.R. 450, 453 (Bankr.E.D.Mass.1991), *aff'd,* 142 B.R. 584 (D.Mass.1992) (citing, *In re First Software Corp.,* 79 B.R. 108 (Bankr.D.Mass.1987)); *In re Stoecker,* 114 B.R. 965 (Bankr.N.D.Ill.1990) (Bankruptcy court need not award fees sought by applicant, and has duty to independently examine reasonableness of fees, even though no objections are raised to fee application).

We are also guided by the principle that "[t]he bankruptcy judge can and must apply his [her] own expertise *sua sponte,* if necessary, in order to be fair to both counsel and creditors because, in the final analysis, either excess generosity or extreme miserliness in allowing fees will reflect in the public perception of the system. 'Because objections to fees are presented so rarely in bankruptcy, the Court's role in this regard is critical.'" *In re Bank of New England Corp.,* 142 B.R. at 588 (citing, *In re Pettibone Corp.,* 74 B.R. 293, 300 (Bankr.N.D.Ill.1987)); *see also, In re Erewhon, Inc.,* 21 B.R. 79, 86 (Bankr. D.Mass.1982) ("The Court is charged with the responsibility to make an independent determination of the reasonable necessity of the services and the appropriate charges for said services as they apply not in general terms but to the specific matters before the Court." *Id.*)

Turning then to the specifics of Mr. Lee's fifth interim application, this request was reduced by $4,000 (approximately 6%), for the following reasons:

■ 1. The Applicant failed to delegate routine tasks to junior associates. Over 82% of the billable time here was charged by Mr. Lee personally, and after review of the application, we estimate conservatively that at least 20% of the described services performed by Mr. Lee could have been assigned to junior associates or paralegals, at lower hourly rates. *See In re Adventist Living Centers, Inc.,* 137 B.R. 692 (Bankr. N.D.Ill.1991) ("In general, a partner will only be compensated at his hourly rate for work that warrants a partner's attention. If a partner spends time performing services that a ... consultant or paraprofessional could do, the partner will be compensated at the lower rate." *Id.* at 698).

■ 2. The use of .25 hours as a minimum billing increment is improper and warrants a reduction in the fee. As do most other courts, we believe that minimum charges of .10–hour increments more fairly reflect actual time involved, than do quarter-hour segments. To allow .25 minimum increments, which the Applicant uses profusely in his fifth application, would result in a substantially inflated cost to the estate which is not reflective of the actual time spent or services rendered. *See In re Stoecker,* 114 B.R. at 976 (the practice of billing in minimum .25–hour increments violated Bankruptcy Rule requiring that *actual time expended* be detailed; attorney

could have used .10–hour increments as minimum unit charged for legal services); *In re Adventist Living Centers, Inc.*, 137 B.R. at 699 (fee reduced by 10% for billing in one hour minimum increments. Court endorsed a one-tenth of one hour minimum increment charge).

In Mr. Lee's present application we note 312 instances where time is billed at .25 hours. This adds up to 78 hours, which even at the Applicant's blended hourly rate of $124.47, equals $9,708.66. This type of billing does not produce accurate results, and whatever error exists is shifted to and borne by creditors.

█ Based upon the frequency of the Applicant's quarter-hour entries, the nature of the services rendered, the complexity of the case, the substantial fees paid to date, and the results achieved, we reduced the application by $4,000 which, in our judgment, *very conservatively* corrects the deficiencies in this fifth application.

Finally, upon reconsideration, sua sponte, of the request for costs and expenses (but reconsideration necessitated by the Applicant's Motion for Findings and Conclusions), Mr. Lee is ordered to file within 30 days, an amended itemized bill of expenses which conforms to the standards and requirements set forth in *In re Bank of New England Corp.*, 134 B.R. 450 (Bankr. E.D.Mass.1991), *aff'd*, 142 B.R. 584 (D.Mass.1992).

Enter Judgment consistent with this opinion.